# United States Court of Appeals for the Federal Circuit

05-3045

JERRY C. STURDY,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Sharon K. Weaver, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Inc., of Tulsa, Oklahoma, for petitioner.  With her on the brief was James R. Polan.

Nancy M. Kim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director.  Of counsel on the brief was Kathryn McClure, Office of the Staff Judge Advocate, United States Army Field Artillery Center, of Fort Sill, Oklahoma.

Appealed from:  United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3045

JERRY C. STURDY,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

_____

DECIDED: March 13, 2006

_____


Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.


Jerry C. Sturdy petitions for review of the final decision of the Merit Systems Protection Board ("Board") that (i) rejected his claim that the Department of the Army ("Army" or "agency") violated his reemployment priority rights in the course of a reduction in force ("RIF") action and (ii) sustained the action of the Army reassigning him from the GS-11 position of Resource Management Specialist at Fort Chaffee, Arkansas, to the GS-11 position of Conservation Specialist at Fort Worth, Texas. Sturdy v. Dep't of the Army, No. DA-0330-98-0028-B-1, slip op. (M.S.P.B. Feb. 7, 2002)

("Initial Decision"). Pursuant to 5 C.F.R. § 1200.3(b) (2005),[1] the initial decision became the final decision of the Board when the two sitting Members of the Board were unable to agree on a ruling in response to Mr. Sturdy's petition for review. Sturdy v. Dep't of the Army, 97 M.S.P.R. 146 (2004) ("Sturdy III"). For the reasons set forth below, we vacate and remand.

BACKGROUND

I.

We begin with the regulatory scheme that frames this case. Under the Veterans' Preference Act of 1944, Pub. L. No. 78-359, 58 Stat. 387 (codified at 5 U.S.C. §§ 2108, 3309-3320), "[a] preference eligible who has been separated or furloughed without delinquency or misconduct, on request, is entitled to have his name placed on appropriate registers and employment lists for every position for which his qualifications have been established." 5 U.S.C. § 3315(a) (2000). The Office of Personnel Management ("OPM") has adopted regulations to implement the requirements of section 3315. The regulations are codified at 5 C.F.R. §§ 330.201-330.209.

Sections 330.201-330.208 require that each agency maintain a reemployment priority list ("RPL") and establish guidelines for the operation of its RPL. Under section 330.201(a), employees entered on an RPL enjoy, at a minimum, "priority consideration over certain outside job applicants." The regulations provide that an agency may not make a final commitment to an individual not on the RPL to fill a permanent or temporary competitive service position when a "qualified" individual is available on the

---

[1] The relevant provisions of the Code of Federal Regulations have not been amended since 1997, the time when the events relevant to this appeal took place. Thus, unless otherwise indicated, all references are to the 2005 version of the Code of Federal Regulations.

agency's RPL, unless the first individual is on the agency's rolls. 5 C.F.R. §§ 330.205(b), (c).

Section 330.201(b) requires that each agency "establish and maintain a reemployment priority list for each commuting area in which it separates eligible competitive service employees by RIF . . . , except as provided by paragraph (c) of this section." The section 330.201(c) exception states:

> An agency need not maintain a distinct RPL for employees separated by reduction in force if the agency operates a placement program for its employees and obtains OPM concurrence that the program satisfies the basic requirements of this subpart. The intent of this provision is to allow agencies to adopt different placement strategies that are effective for their particular programs yet satisfy legal entitlements to priority consideration in reemployment.

Thus, the regulations require that an agency maintain either an RPL or an alternative program that has obtained OPM concurrence or, put another way, approval.

Although agencies must maintain an RPL under sections 330.201(a) and (b) or an equivalent program under section 330.201(c), the regulations do not mandate that employees participate in available agency reemployment programs. Section 330.202 clarifies that placement on an agency RPL is not automatic. In order to be entered on an RPL, an employee must first complete an application within the time frame set forth in section 330.202(a)(1). Section 330.202(a)(1) provides:

> To be entered on the RPL, an eligible employee under § 330.203 must complete an application . . . . Registration may take place as soon as a specific notice of separation under part 351 of this chapter, or a Certification of Expected Separation as provided in § 351.807 of this chapter, has been issued. The employee must submit the application within 30 calendar days after the RIF separation date. An employee who fails to submit a timely application is not entitled to be placed on the RPL.

Even though an employee is not entitled to automatic entry on the RPL, he or she is entitled to receive information from the agency that may aid the employee in applying for the RPL. Pursuant to 5 C.F.R. § 330.203(b), at the time employees receive notices of separation or Certifications of Expected Separation ("CES")s, "the agency must give each eligible employee information about the RPL, including appeal rights."

The regulations also establish qualification requirements for placement through the RPL. In order to be appointed to an open position through the RPL an employee must meet all the requirements set forth in section 330.208(a). Section 330.208(a) provides:

> Subject to applicable requirements of law and this chapter, an individual is considered qualified for a position if he or she:
> (1) Meets OPM-established or approved qualification standards and requirements for the position, including any minimum educational requirements, and any selection placement factors established by the agency;
> (2) Is physically qualified, with reasonable accommodation where appropriate, to perform the duties of the position; and
> (3) Meets any special qualifying condition that OPM has approved for the position.
> (4) Meets any other applicable requirement for appointment to the competitive service.

As noted above, section 330.205(b) requires priority treatment for "qualified" individuals on an agency's RPL. However, section 330.208(a)(1) gives an agency some discretion to establish "selection placement factors." In the August 1995 "Operating Manual for Qualification Standards for General Schedule Positions" ("Operating Manual for Qualification Standards"), OPM notes that "selective placement factors"[2] include

---

[2] OPM appears to use "selection placement factors" and "selective placement factors" interchangeably under section 330.208. When section 330.208 was enacted in 1988, OPM used the term "selective placement factors" in the regulation.

"specialized agency requirements" such as specific training or educational requirements for a particular position. For example, an agency may require knowledge of economics for an economist position. The Operating Manual for Qualification Standards also notes that an agency may require that an employee have an appropriate license, registration, or certification for a particular position. Therefore, "selection placement factors" appear to be agency-established requirements that are tailored for a particular position. Further, subsection (b) of section 330.208 contains an exception that allows an agency, under certain enumerated conditions, to adopt an alternative qualification standard other than the one set forth in subsection (a). Section 330.208(b) expressly notes, however, that this exception "does not authorize a waiver of the selection order required by § 330.207."

Section 330.207 establishes two permissible selection order methods for operating an RPL. These methods are set forth in section 330.207(b), entitled "Retention standing order," and section 330.207(c), entitled "Rating and ranking." If an agency chooses to follow the "Retention standing order" method described in subsection (b), the agency is required to "place <u>qualified individuals</u> in group and subgroup order in accordance with part 351 of this chapter."[3] <u>Id.</u> § 330.207(b) (emphasis added). If the agency chooses the "Rating and ranking" option set forth in subsection (c), then the agency is required to "rate[ ] <u>qualified individuals</u> according to their job experience and education." <u>Id.</u> § 330.207(c) (emphasis added). Thus, both of

---

(Cont'd….)
Final Regulation, 53 Fed. Reg. 45,065, 45,068 (Nov. 8, 1988). We have found no indication as to why the term was changed to "selection placement factors" in the currently codified regulation.

[3] Part 351 governs "Reduction in Force." Subparts D and E of Part 351 describe procedures for determining retention standing order.

the selection order options set forth in section 330.207(c) refer to "qualified individuals." Section 330.207(d) creates an exception that allows an agency to appoint an individual who is either not on the RPL or has a lower standing than others on the RPL to a position when it is "necessary to obtain an employee for duties that cannot be taken over without undue interruption."

Employee appeal rights are established by section 330.209, which states:

> An individual who believes that his or her reemployment priority rights under this subpart have been violated because of the employment of another person who otherwise could not have been appointed properly may appeal to the Merit Systems Protection Board under the provisions of the Board's regulations.

## II.

Turning to the facts of this case, Mr. Sturdy was working as a Resource Management Specialist for the Army at Fort Chaffee, Arkansas, when he received a notice, dated April 3, 1997, informing him that he would be subject to an RIF effective September 30, 1997. At the time of the RIF, the Department of Defense ("DOD"), of which the Army is a part, operated both an RPL and a separate priority placement program ("PPP"). It is undisputed that the PPP was not OPM-approved.

After receiving the notice, Mr. Sturdy took action to increase his chances of finding a new position before the RIF took effect. In that regard, he registered for the PPP. He did not apply for the RPL, however.

After being registered for the PPP in May of 1997, Mr. Sturdy applied for one of three open Environmentalist positions at Fort Chaffee, for which he was rated "qualified." The Army found that he was not "well qualified" for the Environmentalist positions, however, and hired three external applicants instead. These applicants were

not registered on the RPL or on the PPP. Mr. Sturdy ultimately accepted reassignment through the PPP to a Conservation Specialist position at Fort Worth, Texas, in August of 1997. Because his reassignment took effect prior to the September 30, 1997 RIF, Mr. Sturdy was never separated by the RIF. Both Mr. Sturdy's former position as Resource Management Specialist and his new position as Conservation Specialist were at grade GS-11 and carried the same pay.

III.

Mr. Sturdy appealed to the Board on October 14, 1997, claiming that the Army violated his reemployment priority rights when it did not select him for one of the three Environmentalist positions at Fort Chaffee, Arkansas. In an initial decision, the administrative judge ("AJ") to whom the case was assigned dismissed the appeal for lack of jurisdiction because Mr. Sturdy had not registered for the RPL, although he noted Mr. Sturdy's contention that the Army told him that he would be registered on the RPL as of the date of his separation pursuant to the RIF. Sturdy v. Dep't of the Army, No. DA-0330-98-0028-I-1, slip op. at 2-4 (M.S.P.B. Jan. 15, 1998).

Mr. Sturdy petitioned the Board for review of the initial decision. On Mr. Sturdy's petition for review, the Board, citing Stuck v. Department of the Navy, 72 M.S.P.R. 153 (1996), stated: "[A]n agency may maintain both an RPL and a PPP, and the Board has held that, pursuant to [5 C.F.R. §] 330.209, it has jurisdiction to review an alleged violation of reemployment priority rights under a PPP." Sturdy v. Dep't of the Army, 80 M.S.P.R. 273, 276 (1998) ("Sturdy I"), reh'g granted, 230 F.3d 1372 (Fed. Cir. 1999) (table) ("Sturdy Rehearing Decision"), rev'd, Sturdy v. Dep't of the Army, 88 M.S.P.R. 502 (2001) ("Sturdy II"). The Board thus agreed with Mr. Sturdy that his failure to

register for the RPL did not "necessarily deprive the Board of jurisdiction over [his] appeal." Id. However, the Board affirmed the AJ's dismissal of Mr. Sturdy's appeal for lack of jurisdiction on the alternative ground that an employee could only appeal an alleged violation of reemployment priority rights if the employee was separated from his or her position by an RIF, which was not the case with Mr. Sturdy. Id.

The Board's decision in Sturdy I was appealed. While the appeal was pending, the government filed a motion requesting a remand to the Board, so that the Board could address how changes in 5 C.F.R. § 330.203(a)(3) affected the Board's jurisdiction over an employee who, like Mr. Sturdy, had been notified of an impending RIF, but was never actually separated from his or her position. See Eligibility Due to Reduction in Force, 57 Fed. Reg. 21,890 (May 26, 1992).[4] We granted the government's request. Sturdy Rehearing Decision, 230 F.3d at 1372.

On remand, the Board (with its full complement of Members) deferred to the view of OPM that separation by an RIF was not necessary for jurisdiction over an appeal of RPL rights under 5 C.F.R. § 330.209. Sturdy II, 88 M.S.P.R. at 510. The Board then ruled that it had jurisdiction even though Mr. Sturdy had not registered for the RPL because the Army's misinformation about the RPL caused Mr. Sturdy not to register for

---

[4] In 1992, OPM altered the eligibility requirements for entry on the RPL to allow employees to register for the RPL up to six months prior to separation by an RIF. Prior to 1992, subsection (a)(3) required that an employee has "received a specific notice of separation under Part 351 of this chapter" before the employee could be entered on the RPL. 5 C.F.R. § 330.203(a)(3) (1991). The 1992 amendments provided instead that an employee has "received a specific notice of separation under part 351 of this chapter, or a Certification of Expected Separation as provided in § 351.807 of this chapter." 5 C.F.R. § 330.203(a)(3) (1993) (emphasis added). Thus, as of 1992, an employee is eligible for entry on an RPL when the employee is either separated by an RIF or, alternatively, when the employee receives a CES, which may be issued up to six months prior to separation by an RIF. See 5 C.F.R. § 330.203(a).

it.[5] Id. at 511-12. Based upon its ruling, the Board remanded the case to the AJ for adjudication of the merits of Mr. Sturdy's reemployment priority rights claim.

The AJ ruled in the initial decision on remand that the Army had not violated Mr. Sturdy's reemployment priority rights when it found that Mr. Sturdy was not "well qualified" for an Environmentalist position. Initial Decision, slip op. at 1-12. Mr. Sturdy timely petitioned for review of the initial decision by the full Board. In an order issued September 23, 2004, the two sitting Members of the Board, Chairman McPhie and Member Marshall, failed to agree on the disposition of the petition for review. Sturdy III, 97 M.S.P.R. 146. Under 5 C.F.R. § 1200.3(b), the initial decision thereby became the final decision of the Board.

In the September 23, 2004 order, Chairman McPhie expressed his view that the Board had jurisdiction because Mr. Sturdy's failure to register for the RPL was due to agency misinformation. Sturdy III, 97 M.S.P.R. at 153. Despite the fact that the Board had jurisdiction over Mr. Sturdy's appeal, Chairman McPhie would have affirmed the AJ's decision on the merits because, in his view, the agency did not err in finding that Mr. Sturdy was not "well qualified." Id. at 153. Member Marshall, on the other hand, would have dismissed Mr. Sturdy's appeal for lack of jurisdiction. In her view, Mr. Sturdy's appeal failed to meet the jurisdictional requirements of 5 C.F.R. § 330.209 for

---

[5] The Board found credible Mr. Sturdy's allegation that he was told that he and other employees who were affected by the RIF would be registered on the RPL on the date of their RIF separations, which in Mr. Sturdy's case was September 30, 1997. Sturdy II, 88 M.S.P.R. at 512. The Board determined that this allegation indicated "that the agency would register employees for the RPL on their separation date" and that Mr. Sturdy was entitled to rely on this information. Id. The Board also found that the agency's RIF notice and attached information sheet, which Mr. Sturdy received, were insufficient to rebut the above misinformation because they did not indicate when Mr. Sturdy would be registered (or allowed to register) for the RPL. Id.

two reasons: (i) Mr. Sturdy was never separated or demoted pursuant to an RIF; and (ii) Mr. Sturdy was not registered under either an RPL or an OPM-approved PPP. Id. at 154-55.

Mr. Sturdy timely appealed the decision of the Board to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I.

We will overturn a Board decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). We review the Board's findings regarding questions of law, including jurisdiction, without deference to the Board. Carley v. Dep't of the Army, 413 F.3d 1354, 1356 (Fed. Cir. 2005) (citing Diefenderfer v. Merit Sys. Prot. Bd., 194 F.3d 1275, 1277 (Fed. Cir. 1999)).

### II.

We first address the jurisdictional issues in the case. On appeal, the government does not argue, as it did below, that the Board lacked jurisdiction because Mr. Sturdy was never separated by an RIF. Rather, the government argues that the Board lacked jurisdiction because Mr. Sturdy failed to register for the RPL or an OPM-approved PPP. Additionally, the government argues that the Board erred in Sturdy II in concluding that it could exercise jurisdiction over Mr. Sturdy's appeal because his failure to register for the RPL was the result of misinformation from the Army.

Preliminarily, even though the government does not challenge the Board's jurisdiction on the ground that Mr. Sturdy was not separated in the RIF, we must address the issue. The parties may not confer jurisdiction by consent and we must be satisfied that the Board did have jurisdiction. See Dunklebarger v. Merit Sys. Prot. Bd., 130 F.3d 1476, 1480 (Fed. Cir. 1997) ("[A]n agency cannot by acquiescence confer jurisdiction on the Merit Systems Protection Board to hear an appeal that Congress has not authorized the Board to entertain.").

As noted above, the Board ruled in Sturdy II that it had jurisdiction, notwithstanding that Mr. Sturdy had not been separated in the RIF. 88 M.S.P.R. at 510. It did so after considering the advisory opinion that it had requested from OPM on the question. Id. In its advisory opinion, OPM stated that "[s]ince 1987, OPM has notified agencies that RPL appeal rights for employees accrue at the time they have been specifically notified that they are to be separated based on a RIF and are registered on the RPL." Thus, it was OPM's position that, even prior to the 1992 amendment to section 330.203(a), an employee had appeal rights prior to being RIFed. According to OPM, the 1992 amendment merely changed the timing of accrual to allow employees to acquire RPL appeal rights after receiving a CES. Based upon OPM's views, the Board reasoned that separation by RIF is not a jurisdictional requirement for an appeal of reemployment priority rights. Sturdy II, 88 M.S.P.R. at 510. The Board noted that OPM's interpretation was "neither plainly erroneous nor inconsistent with the regulations." Id. Further, the Board was persuaded that public policy favored allowing an employee to appeal reemployment priority rights prior to the employee's separation by an RIF. Id. We see no error in the Board's ruling on this jurisdictional point. OPM's

position and the Board's ruling are consistent with the language of 5 C.F.R. § 330.203(a).

The jurisdictional arguments that the government does make are resolved by Roberto v. Department of the Navy, No. 05-3043, decided today. In Roberto, we hold that the Board has jurisdiction under 5 C.F.R. § 330.209 over a reemployment priority rights claim that is asserted by an individual who registered for either an RPL or an OPM-approved PPP. We also hold that the Board has jurisdiction under section 330.209 over a reemployment priority rights claim that is asserted by an individual who did not register for an RPL when his or her employing agency failed to provide the individual with correct information about the RPL as required by 5 C.F.R. § 330.203(b).

Turning to this case, Mr. Sturdy was not registered on the RPL, and the PPP in which he did register is not OPM-approved. However, in Sturdy II, the Board held that it had jurisdiction because Mr. Sturdy's failure to register on the RPL was the result of misinformation he received from the Army. Sturdy II, 88 M.S.P.R. at 512. As noted, the Board based its finding that Mr. Sturdy had been misinformed on (i) Mr. Sturdy's affidavit stating that the Army led him to believe that he would be entered on the RPL as of the date of his separation by the RIF and (ii) the deficiencies in the description of the RPL that the Army provided to Mr. Sturdy with his RIF notice. Id. In particular, the Board noted that the Army did not provide any information, verbally or in the information sheet attached to Mr. Sturdy's RIF notice, concerning when he would be registered or allowed to register for the RPL. Id. We see no reason to disturb the Board's finding that the Army misinformed Mr. Sturdy. The Board's decision is supported by substantial evidence in the form of Mr. Sturdy's affidavit and the contents of the RPL information

05-3045                          12

sheet provided to Mr. Sturdy with his RIF notice. Thus, the Board properly exercised jurisdiction over Mr. Sturdy's appeal under 5 C.F.R. § 330.209 because his failure to register for the RPL was excused due to misinformation he received from the Army concerning the RPL, in violation of 5 C.F.R. § 330.203(b).

III.

As far as the merits are concerned, Mr. Sturdy argued before the Board that because he was rated "qualified" for the Environmentalist positions, he would have been selected for one of the positions had the agency accorded him proper selection consideration pursuant to 5 C.F.R. §§ 330.206-330.208 (before it considered the applications of the selected outside candidates). Mr. Sturdy urged that it was improper for the agency to use a "well qualified" standard as a selection placement factor under 5 C.F.R. § 330.208. The AJ found, however, that the Army did not violate Mr. Sturdy's reemployment priority rights by hiring three outside candidates for the Environmentalist positions. Initial Decision, slip op. at 11. In reaching that conclusion, the AJ relied on the declaration of Vicki Kosechata, Personnel Management Specialist and Fort Sill Directorate of Personnel.[6] In her declaration, Ms. Kosechata stated that under both the RPL and the PPP, as applied at Fort Sill, candidates for a particular position must be more than merely "qualified." They must be "well qualified." Id., slip op. at 3-4.

The AJ first determined that the "well qualified" standard used in the PPP would be a valid standard if used to administer an RPL. Id., slip op. at 5-7. The AJ concluded that under 5 C.F.R. §§ 330.203-330.208, which govern the administration of RPLs, it is permissible for an agency to utilize a "well qualified" standard. The AJ noted that

---

[6] The Fort Sill Directorate of Personnel administered the RIF that took place at Fort Chaffee in 1997. Initial Decision, slip op. at 4.

05-3045            13

section 330.208(a)(1) permits an agency to establish its own "selection placement factors." Id., slip op. at 5. The AJ reasoned that even if the "well qualified" requirement was a "standard" rather than a "selection placement factor" under section 330.208(a)(1), the requirement still was valid because section 330.208(b) permits an agency to adopt alternative standards for administering an RPL. Id., slip op. at 6-7. The AJ found that nothing in the language of section 330.208(b) barred the Army (Fort Sill) from adopting a heightened qualification standard like the "well qualified" standard rather than a lowered qualification standard. Id., slip op. at 7. After determining that the "well qualified" requirement complied with the RPL regulations, the AJ ruled that the Army had not erred when it applied the "well qualified" requirement to Mr. Sturdy. Id., slip op. at 8-11. The AJ found that the Army had demonstrated by a preponderance of the evidence that Mr. Sturdy was not "well qualified" for the Environmentalist positions at Fort Chaffee. Id., slip op. at 11.

On appeal, Mr. Sturdy argues that the "well qualified" requirement utilized by the PPP and the RPL comprises an impermissible heightened standard under 5 C.F.R. §§ 330.201-330.208. As he did before the Board, he urges that by applying a heightened "well qualified" standard, the Army violated his reemployment priority rights under sections 330.201-330.208. According to Mr. Sturdy, the DOD's heightened "well qualified" standard effectively eliminates any priority. He asserts that pursuant to 5 C.F.R. §§ 330.205(b) and 330.208(a), an individual simply must be "qualified," rather than "well qualified." In addition, Mr. Sturdy contends that even if the DOD's "well qualified" requirement was a permissible alternative standard under section 330.208(b), the Army had to comply with the selection method outlined in 5 C.F.R. § 330.207. Mr.

Sturdy urges that because section 330.207 requires that "qualified" candidates on an RPL be considered for a position in a particular order relative to other candidates, the agency's refusal to consider Mr. Sturdy because he was not "well qualified" violated section 330.207. Although Mr. Sturdy raises the issue of the validity of the "well qualified" standard, he does not argue on appeal that the AJ erred in finding that he was not "well qualified" for the Environmentalist positions.

The government contends that the AJ correctly found that the "well qualified" requirement used by the Army at Fort Sill constituted a permissible agency "selection placement factor" pursuant to 5 C.F.R. § 330.208(a)(1). According to the government, the "well qualified" requirement is a "selection placement factor" because it "places a premium on factors such as the applicant's training and experience." In the alternative, the Army contends that section 330.208(b) authorizes the use of a "well qualified" requirement as an "alternative qualification standard."

The question before us is whether the Army violated Mr. Sturdy's reemployment priority rights under 5 C.F.R. §§ 330.201-330.208 by not hiring him for one of the three Environmentalist positions at Fort Chaffee because, although he was "qualified" for the positions, he was not "well qualified" for them. More precisely, the question is whether the Army violated Mr. Sturdy's reemployment priority rights under the DOD RPL. There are two reasons for this. First, although Mr. Sturdy was enrolled in the DOD PPP and was considered for the Environmentalist positions under the PPP and not under the RPL, the PPP was not approved by OPM. Therefore, it is not governed by the regulations at 5 C.F.R. §§ 330.201-330.208. As a result, Mr. Sturdy's argument that the PPP's "well qualified" requirement does not comply with sections 330.201-330.208 fails

because the PPP is not subject to the regulations. In addition, under <u>Roberto</u>, the Board was without jurisdiction to consider any claims arising under the PPP. Second, the Board found that Mr. Sturdy's failure to register for the DOD RPL was the result of misinformation he received from the Army. Under <u>Roberto</u>, as a result of this finding, the Board had jurisdiction under 5 C.F.R. § 330.209 to determine whether Mr. Sturdy's reemployment priority rights under the RPL were violated.

Whether Mr. Sturdy's RPL rights were violated comes down to a hypothetical question. The question is this: If Mr. Sturdy had registered for the RPL would he have been selected for one of the three Environmentalist positions? Before answering this question, however, we must decide whether it would have been proper for the Army to apply a "well qualified" standard[7] under the DOD RPL. If it would have been proper to apply the "well qualified" standard, then it is clear that Mr. Sturdy would not have been selected. That is because it is undisputed that he was "qualified" for the positions, but not "well qualified." If however, it would not have been proper for the Army to use the "well qualified" standard under the DOD RPL, the matter boils down to whether Mr. Sturdy would have been selected for one of the positions under the proper standard. If the answer to that question is "yes," then his reemployment priority rights were violated.

---

[7] We reject the Army's argument that the "well qualified" requirement is a "selection placement factor." "Selection placement factors" are agency-established requirements that are specifically tailored for a particular position. <u>See</u> Office of Personnel Management, Operating Manual for Qualification Standards 19-24 (1995). The "well qualified" requirement mandates that an employee "be completely acceptable," that he or she not require extensive training, and that he or she have recent experience. Department of Defense, DOD Program for Stability of Civilian Employment 3-12 (1990). Thus, the "well qualified" requirement is not tailored to a specific position like a "selection placement factor." We therefore find that the "well qualified" requirement is a standard rather than a "selection placement factor" under 5 C.F.R. § 330.208(a)(1).

We begin with the pertinent provisions of the RPL itself. The RPL is set forth in Subchapter 330 of the "Department of Defense Civilian Personnel Manual" ("DOD CPM"). The paragraphs of the RPL are designated "SC." Subparagraph SC330.1 states that, among other things, Subchapter 330 implements DOD policy under Part 330 of Title 5 of the Code of Federal Regulations. Subparagraph SC330.3.1 provides that, within DOD, "eligible RPL applicants shall be provided priority consideration for reemployment in accordance with the provision of . . . Subchapter [330]." At the same time, subparagraph SC330.3.5 instructs that rights provided under the RPL pursuant to Subchapter 330 and 5 C.F.R. Part 330, including the right of appeal to the Board, "are separate and distinct" from those provided pursuant to the DOD PPP. The paragraph adds that "[t]he PPP and the RPL operate independently."

Paragraph SC330.6 sets forth eligibility requirements for the RPL. It states that individuals who meet the conditions enumerated in paragraph SC330.6—which it notes are specified in 5 C.F.R. §§ 330.203 and 330.204[8]—"may receive reemployment consideration" under the RPL. Subparagraph SC330.6.1.2 states that an individual is eligible for placement on the RPL if he or she "[r]eceived a performance rating above unacceptable . . . , or equivalent, on the last annual performance rating of record" for the RIF. Finally, subparagraph SC330.8, which deals with selection order, states that

---

[8] Section 330.203 sets forth the prerequisites for applying for the RPL. Under section 330.203(a), an employee must serve under an appointment in the competitive service in one of two particular tenure groups, have received a rating "above unacceptable" in the employee's last annual performance rating, and received a notice of separation or CES. Further, section 330.203(a)(4) requires that an employee have not declined an offer for placement during the course of an RIF for the same type of work schedule and a representative rate at least as high as the employee's previously held appointment. Section 330.204 sets forth the eligibility requirements for competitive service employees with a compensable injury or disability. Both section 330.203 and section 330.204 also describe conditions for removal from the RPL.

"[w]hen a <u>qualified</u> RPL applicant is present on an activity's RPL, an activity may not make new appointment unless the appointee is a qualified 10-point preference eligible." (emphasis added). Subparagraph SC330.8 concludes with the statement that "RPL guidance on the required selection order and applicable exceptions are provided in 5 CFR 330."

Based upon the foregoing, it seems to us that two points are clear. First, DOD's RPL and PPP are separate and distinct programs. Second, the qualification standard under the RPL is "qualified" not "well qualified." That is the case, we think, for two reasons. The first reason is that the RPL is squarely grounded in the regulations set forth at 5 C.F.R §§ 330.301-330.208. Those regulations speak in terms of "<u>qualified</u>" individuals. <u>See</u> 5 C.F.R. §§ 330.205(b), (c)(1), (c)(2) ("Employment restrictions"); §§ 330.207(b), (c)(1), (c)(2)(ii) ("Selection from RPL") (emphasis added). The second reason is that the language of the RPL itself supports the conclusion that the governing standard is "qualified." Subparagraph SC330.6.1.2 states that an individual is eligible for reemployment consideration under the RPL if he or she had a last performance rating "above unacceptable." At the same time, subparagraph SC330.8 refers to a "<u>qualified</u>" RPL applicant (emphasis added). Taken together, these provisions are consistent with a standard of "qualified," rather than "well qualified."

If, then, the RPL's governing standard is "qualified," rather than "well qualified," the question that remains is whether, at Fort Sill, the Army has properly added a "well qualified" gloss to the RPL standard. (As noted above, Ms. Kosechata stated in her declaration before the Board that, as the RPL is applied at Fort Sill, "the Agency requires that RPL registrants be well-qualified for placement into positions. This has

been a consistent policy of Fort Sill . . . .")  In our view, the answer to this question is "No."

The government argues that the regulations allowed Fort Sill to adopt an alternative qualification standard under the DOD RPL.  As seen above, under 5 C.F.R. § 330.208(a)(1), an employee is "qualified" for a position if he or she "[m]eets OPM-established or approved <u>qualification standards</u> and requirements."  (emphasis added).  Thus, "qualification standards" typically must be "OPM-established or approved."  However, the government urges that section 330.208(b) gives agencies flexibility by allowing them to adopt entirely different qualification standards.  As already seen, section 330.208(b) provides:

> An agency may make an exception to the qualification standard and adopt an alternative standard under the following conditions (this provision does not authorize waiver of the selection order required by § 330.207):
> (1)    The exception is applied consistently and equitably in filling a position;
> (2)    The individual meets any minimum educational requirements for the position; and
> (3)    The agency determines that the individual has the capacity, adaptability, and special skills needed to satisfactorily perform the duties and responsibilities of the position.

We are not persuaded by the government's argument.  In our view, the problem with it is this:  Assuming for the moment—and it is a matter that we do not decide—that DOD could properly impose a "well qualified" standard in the implementation of its RPL, that is not what happened here.  Pursuant to 5 C.F.R. § 330.201(b), "[e]ach agency is required to establish and maintain a reemployment priority list for each commuting area in which it separates eligible competitive service employees by RIF."  To effectuate that mandate, DOD established the RPL program at issue in this case.  By its terms, the

DOD RPL, which we have examined above, applies, <u>inter alia</u>, to "the Military Departments." Department of Defense, DOD CPM, subparagraph SC330.2 (1996). DOD is the "agency" that adopted the RPL in this case, and that RPL embodies a qualification standard of "qualified." There is no indication, let alone suggestion, that DOD, as the implementing agency, has adopted a "well qualified" standard for its RPL. All we are told is that the "consistent policy" of Fort Sill is to require that RPL registrants be "well qualified." Fort Sill, however, cannot effectively alter the qualification standard of DOD's RPL by applying it as if it read "well qualified."[9] Accordingly, it is the "qualified" standard of DOD's RPL that controls the disposition of this case. Thus, if Mr. Sturdy had been registered on the DOD RPL, the Army would have had to consider him for one of the Environmentalist positions at Fort Chaffee under a "qualified," rather than "well qualified" standard.

CONCLUSION

We reject Mr. Sturdy's argument that the Army violated his reemployment priority rights under the DOD PPP by applying a "well qualified" standard to his application for

---

[9] The foreword of the DOD CPM provides, "Use of this Manual by all DoD Components is mandatory." Further, subparagraph C100.2.3 of Chapter 100 ("General Information") states, "Civilian personnel policies, procedures, and programs as set forth in this Manual are binding on all DoD Components. Existing DoD Component civilian personnel policies, procedures, and programs may continue until superseded by law, controlling regulations, new provisions of this Manual, or related DoD Publication provision." Thus, the manual is binding on <u>all</u> DOD components, including the Army. <u>See</u> <u>Farrell v. Dep't of the Interior</u>, 314 F.3d 584, 590 (Fed. Cir. 2002) (noting that an agency statement may bind the agency if the agency intended the statement to be binding); <u>see also</u> <u>Hamlet v. United States</u>, 63 F.3d 1097, 1105 (Fed. Cir. 1995) (holding that when determining whether a provision of an agency personnel manual is binding on the agency, a court should consider, among other things, "whether the language of the provision is mandatory or advisory"). Further, the Army has not directed us to anything showing that DOD intended for the Fort Sill Directorate to have the discretion to adopt different RPL policies and procedures than the mandatory policies set forth in the manual.

one the Fort Chaffee Environmentalist positions. However, the Army did violate Mr. Sturdy's reemployment priority rights by misinforming him as to his rights under the DOD RPL. As a result, it must be determined whether, if Mr. Sturdy had registered on the DOD RPL, he would have been selected for one of the Environmentalist positions. That determination has not yet been made. Accordingly, the final decision of the Board sustaining Mr. Sturdy's non-selection is vacated. The case is remanded to the Board for a determination of whether, if Mr. Sturdy had been registered on the RPL, he would have been selected for one of the Environmentalist positions.[10] In making this determination, the Board should start from the premise that, as an RPL registrant, Mr. Sturdy would have been considered for the position under a "qualified" rather than a "well qualified" standard.

COSTS

Each party shall bear its own costs.

VACATED and REMANDED

---

[10] The record reflects that, in addition to Mr. Sturdy and the three external applicants, there were six other eligible applicants for the Environmentalist positions at Fort Chaffee. It is unclear from the record before us whether any of these six applicants were internal applicants or registered on either the RPL or the PPP. Therefore, we cannot determine whether or not Mr. Sturdy would have been placed in one of the Environmentalist positions even under a "qualified" standard.